IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEPHEN D. ATWATER, et al.,

        Plaintiffs,

                           CIVIL ACTION NO.

v.                       1:06-CV-1510-JEC

THE NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION, et. al.,

        Defendants.

**FILED IN CLERK'S OFFICE**
U.S.D.C. Atlanta

⸛⸛⸛ ⸛⸛ 2007

JAMES N. ⸛⸛⸛, Clerk
By. ⸛⸛⸛⸛ Deputy Clerk

### <u>ORDER & OPINION</u>

This case is presently before the Court on the National Football League's Motion to Dismiss [19]; the National Football League Players Association's Motion to Dismiss [20]; the National Football League Players Association's Motion for a More Definite Statement [21]; plaintiffs' Motion for Relief Pursuant to Rule 56(f) [28]; and the National Football League Players Association's Motion for Leave to File Sur-Reply [35].

The Court has reviewed the record and concludes that the National Football League's Motion to Dismiss [19] should be **DENIED;** the National Football League Players Association's Motion to Dismiss [20] should be **DENIED;** the National Football League Players Association's Motion for a More Definite Statement [21] should be

**DENIED**; plaintiffs' Motion for Relief Pursuant to Rule 56(f) [28] should be **DENIED as moot**; and the National Football League Players Association's Motion for Leave to File Sur-Reply [35] should be **DENIED**.

**BACKGROUND**

**I.   Procedural Background**

On June 23, 2006 plaintiffs filed a Complaint in the United States District Court for the Northern District of Georgia. ("Compl." [1] at 2.)  Plaintiffs filed an Amended Complaint on July 14, 2006, prior to defendants filing an answer. ("Am. Compl." [10].) In their Amended Complaint, plaintiffs allege that defendant, the National Football League (the "NFL"), breached its duty to plaintiffs by negligently performing background checks on certain financial advisors who participated in the National Football League Players Association's ("NFLPA") financial advisor program (the "Program"), and that the NFLPA breached its duty to plaintiffs by negligently operating the Program.  ("Am. Compl." at ¶¶ 5, 68-72, 76, 85-87, 95-96, 107-108.)

Defendants filed separate Motions to Dismiss on August 18, 2006. ("NFL Mot. to Dismiss" [19]; "NFLPA Mot. to Dismiss" [20].)  The NFLPA filed an alternative Motion for More Definite Statement the same day it filed its Motion to Dismiss.  ("Mot. for More Definite Statement" [21].)  Then on November 6, 2006, the NFLPA filed a Motion

2

for Leave to File Sur-Reply in response to plaintiffs' Memorandum in Support of their Motion for Relief Pursuant to Rule 56(f). (Mot. to File Sur-Reply" [35].)

## II.  **Factual Background**

Plaintiffs are six former and current professional football league players, a spouse of one of the former player plaintiffs, and entities created by or for the benefit of plaintiffs. ("Am. Compl." at ¶ 6-16.)   The former and current professional football player plaintiffs paid annual dues to the NFLPA for various services and benefits that the NFLPA provided to its members. (*Id.* ¶ 23.)   One of those services includes providing a non-public list of pre-screened, "registered" financial advisors. (*Id.* at ¶ 24.)   Plaintiffs could choose to retain these advisors to provide them with financial and other investment advice. (*Id.*)

The NFLPA established the Registered Financial Advisory Program (the "Program") in 2002. (*Id.* at ¶ 25.)   On February 12, 2003, the NFLPA granted Kirk Wright's ("Wright") application for registration in the Program as a financial advisor with IMA. (*Id.* at ¶ 61.)   The NFLPA re-registered Wright at least once after that, and he was registered with the NFLPA in 2005. (*Id.*)   In 2005, the NFLPA granted Nelson "Keith" Bond's ("Bond") application for registration in the Program. (*Id.* at ¶ 62.)   When the NFLPA granted Wright's and Bond's applications, both held positions as principals in International

3

Management Associates LLC ("IMA") and International Management Associates Advisory Group ("IMAAG"). (*Id.* at ¶ 63.) Prior to granting the applications, the NFLPA was expected to perform a thorough background check of Wright, Bond, IMA, IMAAG, their affiliated entities, partners and officers to ensure that all Program requirements had been met. (*Id.* at ¶ 64.) In accordance with the Program requirements, the NFLPA also had to make certain that neither Wright, Bond nor their affiliated officers and partners had any adverse liens or judgments. (*Id.* at ¶ 65.)

Prior to making investments with IMA, plaintiff Bishop and Emmons, through his NFL Contract Advisor, contacted the NFL and requested that it run a background check on Wright, Bond and/or IMA. (*Id.* at ¶¶ 68, 70.) The NFL ran these background checks and reported to plaintiffs Bishop and Emmons that it did not see any red flags that raise any concerns. (*Id.* at ¶ 71.)

Plaintiffs allege that in reliance upon the NFL's and NFLPA's purported check and clearance of Wright and Bond, and the NFLPA's registration of them in the Financial Advisors Program, plaintiffs collectively invested approximately $20 million in hedge funds managed by International Management Associates. (*Id.* at ¶¶ 74-75.) During the time plaintiffs made their investments with Wright, Bond and IMA, neither the NFL nor NFLPA advised plaintiffs of the fact that neither Wright, Bond, IMA nor IMAAG were registered as financial

4

advisors in any state or federal jurisdiction prior to the NFLPA's registration, or that Wright and Bond had several state and federal judgements and tax liens placed against them. (*Id.* at ¶ 76.)

On December 5, 2005, plaintiffs requested, in writing, the return of their investment account balances with Wright, Bond and IMA. (*Id.* at ¶ 79.) Wright, Bond and IMA failed to return plaintiffs' account balances. (*Id.*) Plaintiffs now seek monetary relief for damages arising from defendants' negligence, negligent misrepresentation, breach of fiduciary duty and promises which led plaintiffs to invest with Wright, Bond and IMA. (*Id.* at ¶¶ 82-115.) Plaintiffs also seek injunctive relief requiring, *inter alia*, defendants to make substantial improvements in the manner and method in which they conduct background checks on prospective financial advisors and an overhaul of the Program. (*Id.* at ¶ 120.) This case is now before the Court on defendants' Motions to Dismiss [19] and [20], the NFLPA's alternative Motion for a More Definite Statement [21], plaintiffs' Motion for Relief Pursuant to Rule 56(f) [28], and defendant NFLPA's Motion for Leave to file a Sur-Reply [35].

## DISCUSSION

I. **Whether Section 301 of the Labor Management Relations Act Preempts Plaintiffs' Claims**

A. **Preemption, Generally**

Both defendants NFL and the NFLPA argue that plaintiffs' claims

should be dismissed on preemption grounds.  Because both defendants ask the Court to decide the same issue of law, the Court will consider the NFL's and NFLPA's arguments together.  Defendants argue that plaintiffs' allegations are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because resolution of plaintiffs' claims require interpretation of the NFL's Collective Bargaining Agreement ("CBA") with the National Football League Players Association and because the complaint seeks to change the collectively bargained terms and conditions of employment of NFL players.

Because defendants rely primarily on a provision in the Collective Bargaining Agreement, which is a document outside of the pleadings, for their preemption argument, the Court, at the outset, must determine whether it can examine this document without converting defendants' motions to dismiss into motions for summary judgment.  In *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002), the Eleventh Circuit held that a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim; and (2) undisputed.  In this particular context, undisputed means that the authenticity of the document is not challenged.

Here, because no provision of the CBA is central to plaintiffs'

AO 72A
(Rev.8/82)

claims, the Court may not consider this document in deciding defendants' motions to dismiss, without converting these motions into ones for summary judgment. Though defendants argue vehemently that the CBA forms a central component of plaintiffs' claims, plaintiffs do not rely on, or even reference, the CBA. *See Wilchombe v. Teevee Toons, Inc.*, Civ. A. No. 1:04-CV-1775-MHS, 2006 WL 1553939, at *2 (N.D. Ga. June 2 2006) (court would not consider contracts on motion to dismiss because they were not referred to or mentioned in plaintiff's amended complaint). Plaintiffs do not contend that any rights and duties owed by defendants flow from or originate with the CBA. Thus, the Court may not consider the CBA in ruling on the defendants' motion to dismiss. In addition, the Court chooses not to convert defendants' motions to dismiss into ones for summary judgment.

Without a full and appropriate review of the CBA, the Court cannot determine which, if any, provisions in the CBA apply to plaintiffs' claims. Thus, the Court will not dismiss plaintiffs' allegations on preemption grounds at this stage of the litigation. Furthermore, even if this Court accepted defendants' view that the CBA is central to plaintiffs' claims, it is not certain, at this juncture, that plaintiffs' claims are preempted as a matter of law.

Section 301 of the Labor Management Relations Act provides for federal jurisdiction over disputes regarding collective bargaining

7

agreements and requires the application of federal law to resolve these disputes.   The statute provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce...or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The Supreme Court has rendered a number of decisions determining the scope of preemption for claims potentially arising under a collective bargaining agreement.   These decisions make   clear that when resolution of a state claim substantially depends upon analysis of the terms of an agreement made between the parties in a labor contract, preemption is required. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).   In order to determine if a state law claim substantially depends on a provision in the CBA, the courts must determine if the claim derives from or is implied from contract rights established under a collective bargaining agreement, and whether evaluation of the claim is inextricably intertwined with consideration of the terms of the labor contract.   (*Id.*) However, the Supreme Court has also noted that "[t]he full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis."   (*Id.* at 220.)

Furthermore, the existence of a CBA, by itself, does not prevent

8

a party from bringing a state law claim, if such a claim arises from an independent agreement or obligation. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 (1987) ("plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement.")   Furthermore, a plaintiff may bring a state law tort action if the claim does not require interpretation of the collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988)(Section 301 does not preempt retaliatory discharge claim, which can be resolved without interpretation of the collective bargaining agreement).

Here, there is a question as to whether Article LV, § 12 in the CBA governing the employment relationship with NFL players[1] relates

---

[1]   *See* Collective Bargaining Agreement attach. as Ex. A to NFLPA's Mot. to Dismiss (This Agreement...is made and entered into...in accordance with the provisions of the National Labor Relations Act...by and between the National Football League Council...which is recognized as the sole and exclusive bargaining representative of present and future employer member clubs of the National Football League...and the National Football League Players Association...which is recognized as the sole and exclusive bargaining representative of present and future employee players in the NFL in a bargaining unit" (Preamble). *See also* "all players, Clubs, the NFLPA, the NFL and the Management Council will be bound hereby." (*Id.* at Art. II, § 1.)   The CBA "represents the complete understanding of the parties on all subjects covered herein," *id.* Art. III, § 1, is binding on all members of the NFLPA and their "heirs, executors, administrators, representatives, agents, successors and assigns," (*Id.* at Art. LV, § 14.)

to plaintiffs' allegations.  Article LV, § 12 provides:

> Section 12. Career Planning Program: The parties will use
> best efforts to establish an in-depth, comprehensive
> Career Planning Program.  The purpose of the program will
> be to help players enhance their career in the NFL and
> make a smooth transition to a second career.  The program
> will also provide information to players on handling
> their personal finances, it being understood that players
> shall be solely responsible for their personal finances.

CBA attach. as Ex. A to NFLPA's Mot. to Dismiss at Art. LV, § 12.

Defendants argue that resolution of plaintiffs' state law claims requires interpretation of the CBA's provision that "players shall be solely responsible for their personal finances."  (*Id.*) Specifically, defendants argue that under *U.S. v. Rawson*, 495 U.S. 362 (1990), claims which arise under duties purportedly imposed under state law, which cannot be fully defined without interpreting a CBA, are preempted by Section 301.  In *Rawson*, survivors of miners killed in a fire brought an action against the miner's union, alleging state law fraud and negligence in conducting safety inspections.  The Supreme Court held that any duty the union failed to perform in connection with the inspection of the mine arose under the collective bargaining agreement, and, thus, was preempted by federal law.  (*Id.*) at 371.  The Court specifically stated, "Pre-emption by federal law cannot be avoided by characterizing the Union's negligent performance of what it does on behalf of the members of the bargaining unit pursuant to the terms of the collective-bargaining contract as a

10

AO 72A
(Rev.8/82)

state-law tort." *Id.* at 371-372 (internal quotation omitted) Because the union had not assumed any independent duty of care to the public, the Court held that respondent's tort claim arose under the CBA. *Id.* at 371. *See also Clarke v. Laborers Int'l Union of N. Am., AFL-CIO*, 916 F.2d 1539, 1542 (11th Cir. 1990) (claim for negligence by plaintiffs against union for undertaking duty established in the CBA preempted by Section 301.)

Defendants also rely heavily on *Jackson v. NFLPA*, Civ. A. No. 92-2134 (W.D.Pa. 1993) (attach. as Ex. B to NFLPA's Mot. to Dismiss.) In *Jackson*, the plaintiffs, who were current and/or former National Football League Players who had retained Joseph Senkovich, Jr. as their contract advisor, asserted counts of negligent misrepresentation, breach of fiduciary duty and professional negligence against the NFLPA for misrepresentations made by Senkovich, Jr. (*Id.* at. 1-2.) The district court judge presiding over the case ruled that plaintiffs' state law claims depended on the interpretation of the CBA. The record indicated that the NFLPA adopted regulations governing Contract Advisors, and that the authority for the adoption of those regulations was § 9(a) of the NLRA and Art. XXII, § 2 of the 1982 CBA. (*Id.* at B-3, 5) Moreover, even though plaintiffs argued that the "contract advisor" provision did not apply to the particular facts of the case, because plaintiffs failed to identify a separate source for any duty owed to plaintiffs,

11

the Court held such claims preempted.

Defendants argue that because Art. LV, § 12 of the CBA states that the NFL and NFLPA will "provide information to players on handling their personal finances, it being understood that players shall be solely responsible for their personal finances", and because defendants did not owe any duty of care to the public in general, § 301 requires preemption of plaintiffs' claims.

Here, there remains some question as to whether the Financial Advisors Program created a separate and distinct duty on the part of the NFL and NFLPA to plaintiffs.  Plaintiffs contend that the NFLPA agreed to conduct a myriad of services through the Financial Advisor Services Program.  For instance, according to plaintiffs, in connection with establishing the Financial Advisors Program, the NFLPA requested that the Securities Exchange Commission ("SEC") exempt the NFLPA from the Investment Advisors Act of 1940, Section 202(a)(11) and Rule 206(4)-3.  (Am. Compl. at ¶ 31.)  In this request, the NFLPA represented that the program "as a service for our members,...will simply pre-screen all financial advisors who apply to participate in the Program--be they investment advisors or not--as to their character, reputation and integrity."  (*Id.* at ¶ 33.) Moreover, the NFLPA represented that through the Financial Advisors Program, the NFLPA agreed that it would "have no role in the dealings or transactions between players and registered advisors, except in

12

connection with monitoring their compliance with Program regulations and disciplining those registered advisors who violate Program regulations." (*Id.* at ¶ 34.) The NFLPA also stated that "The NFLPA will monitor the compliance of registered advisors with the Program's eligibility requirements and regulations." (*Id.*)

Additionally, plaintiffs allege that the NFL gratuitously performed background checks of financial advisors for the benefit of the NFL players and that it is liable for negligent performance of this duty. (*Id.* at ¶¶ 68-74.)

Though defendants rely on *Jackson*, *Rawson*, and *Clarke*, the relevant facts, as developed at this point in the litigation, are inapposite. In each of those cases the courts held that defendants performed a duty, which could have arisen only under the CBA.[2] In

---

[2]    In *Rawson*, 495 U.S. at 371 the Court stated "If the Union failed to perform a duty in connection with inspection, it was a duty arising out of the collective-bargaining agreement signed by the Union as the bargaining agent for the miners.   Clearly, the enforcement of that agreement and the remedies for its breach are matters governed by federal law."

Likewise, in *Clarke*, 916 F.2d 1539, the Court held that plaintiff "failed to demonstrate that the unions had any duty independent of the collective bargaining agreement to insure his safety or to intervene on his behalf. Because the nature and scope of any duty of the unions is therefore determined by reference to the collective bargaining agreement, § 301 rather than state law governs the plaintiff's claims." *Id.* at 1542.

Finally, in *Jackson*, the court similarly found that the union's duty arose under the CBA, stating that "...the only relationship Plaintiffs had with the NFLPA in 1988 is drawn from their status of

the present case, plaintiffs argue that the NFLPA and NFL had a duty under state law to perform certain activities in a non-negligent manner, and that this duty was wholly unrelated to the plaintiffs' CBA.  Because the Court cannot determine, at this time, whether the duty arose under the CBA, or under a separate duty, the Court does not find that Section 301 preempts plaintiffs' claims.

In *Peters v. Sikorsky Aircraft Corp.*, Civ. A. No. 3:04-CV-1066, 2006 WL 2331077 (D. Conn. Aug. 10, 2006), a recent case out of the District of Connecticut, the court did not preempt plaintiff's discrimination claim because plaintiff's employer potentially denied plaintiff a position because of his disability, which decision would have implicated rights separate and apart from the CBA.  Plaintiff had specifically argued that the union refused to recall him because of his physical disability, and that such a failure to recall constituted discriminatory employment practices under Connecticut law.  *Peters*, 2006 WL 2331077 at *3.  The defendants had argued that plaintiff's disability discrimination claim was based on two recalls and that because the right to recall was established by the CBA, plaintiff's claims were preempted under *Allis-Chalmers Corp.* and

---

being union members and the NFLPA's status as bargaining representative.  Plaintiffs have pointed to no language in the 1982 CBA expanding any obligation owed to Plaintiffs by the NFLPA beyond the statutory duty of fair representation." (*Jackson*, attach. as Ex. B to NFLPA's Mot. to Dismiss at Ex. B at B-6.)

14

*United Steelworkers of Am. v. Rawson.   Id.* at *4-5.

The *Peters* court found defendants' cited cases inapposite because, in each of those cases, the right or duty a plaintiff sought to enforce derived from the CBA, whereas in the present case, plaintiff sought to redress rights not created or derived by the CBA. The Court stated, "As the caselaw cited above demonstrates, a claim alleging a failure to recall pursuant to a CBA may be preempted where the underlying duty to recall arises from the CBA.   However, the Court believes that Plaintiff's discrimination claim concerns rights and duties that exist independently of the CBA." *Id.* at 6.

Similarly, in the present case, the rights and duties plaintiff seeks to redress may or may not arise under the CBA.   Despite the provision of the CBA that deals with "career planning" and financial services, the Court is not convinced that the CBA covers the activity complained of here.   First of all, the CBA makes no direct reference to the NFLPA's Registered Financial Advisor Program.    Second, nothing explicitly in the CBA indicates that the NFLPA had any duty or obligation to establish, operate, or maintain the Program. Likewise, there is no indication that the NFL had a duty or obligation to conduct background checks for NFL football players. Based on the empty record before the Court, the Court cannot definitely determine that the plaintiffs' rights derive from the CBA.

Thus, as the District Court of Connecticut recently held in

AO 72A
(Rev.8/82)

*Peters*, when rights and duties arise from state law rather than the CBA, Section 301 does not preempt plaintiffs' claims.   Unlike in *Clarke*, *Jackson*, and *Rawson*, where the only duty that defendant could have owed plaintiff would have derived from the CBA, here, plaintiffs claim that a financial advisors program, not operated under the terms of the CBA, created distinct rights and duties.   Because the Court cannot determine at this time whether the union agreed to expand the rights and duties it owed to plaintiffs under the CBA, the Court will not dismiss plaintiffs' allegations at this stage.

**B.    The Court Need not Determine the Scope of the Bargaining Unit**

Plaintiffs assert that defendants' preemption argument only applies to plaintiff Carlos Emmons, the only plaintiff currently employed as a professional football player.   Plaintiffs in this case are five former professional NFL football players, the spouse of one of the former football players, seven entities created by or for the benefit of the former players or their families, and one current NFL player, Carlos Emmons.   (Am. Compl. at ¶¶ 6-16.)   According to plaintiffs, the CBA does not apply to retired, former NFL football players, their spouses or any private entities that they may create. They, therefore, argue that Section 301 cannot preempt their claims. Because the Court is not dismissing plaintiffs' Amended Complaint on preemption grounds, it need not address this argument at this

16

juncture.

## II. **Whether Plaintiffs' Claims Survive the Exculpatory Clause**

Defendant, the NFLPA, also argues that the Court should dismiss plaintiffs' claims based on the exculpatory provision found in the NFLPA Regulations and Code of Conduct Governing Registered Player Financial Advisors ("NFLPA Financial Advisor Regulations".)

It should first be noted that this Court may consider documents outside of the pleadings on a motion to dismiss, without converting the motion into one for summary judgment in limited circumstances. As aforementioned, in *Horsley*, 304 F.3d at 1134, the Eleventh Circuit held that the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim; and (2) undisputed.   In this particular context, undisputed means that the authenticity of the document is not challenged.

Here, the Court may consider the NFLPA Financial Advisors Regulations because they are central to plaintiffs' claims and their authenticity is not disputed.   Though plaintiffs do not explicitly mention the Regulations in their Amended Complaint, the Eleventh Circuit held that a complaint need not mention nor attach a document in order for the court to consider the document at the motion to dismiss stage, if the document is central to plaintiff's claims and not disputed in terms of authenticity. *See Maxcess, Inc. v. Lucent*

17

*Tech., Inc.*, 433 F.3d 1337, 1340 n. 3 (11th Cir. 2005) ("a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.")  Thus, the Court finds that this document falls within the incorporation by reference rule, and may consider this document without converting defendants' Motion to Dismiss into one for Summary Judgment.

Section Seven of the NFLPA Financial Advisor Regulations contains an exculpatory phrase providing the following:

> The NFLPA is not endorsing any Registered Player Financial Advisor for, and disclaims, any liability for the acts or omissions of any Registered Player Financial Advisor. The NFLPA is also not responsible for, and disclaims, any liability for the acts or omissions of any Registered Player Financial Advisor, or any other person. The NFLPA is not in a position to determine whether Applicants for Registration as Registered Player Financial Advisors that provide Broker-Dealer, Investment Adviser, Insurance sales, or other regulated financial services are properly registered with, licensed by or otherwise in compliance with all rules and regulations of the appropriate federal and/or state governmental agency, authority, or organization. As a result, the NFLPA will rely entirely on the truthfulness of statements by any person or entity applying for Registration as an NFLPA Registered Player Financial Advisor that it has the necessary Broker, Dealer, or Investment Adviser registration under applicable securities or commodities laws, SRO membership, licensing or other qualifications imposed by applicable federal and/or state law to render the financial services specified in the Application. Applicants will only be registered with respect to services disclosed in the Application.

Application attach. as Ex. C to Defendant NFLPA's Mot. to Dismiss at C-18.)

18

NFLPA argue that this clause disclaims any liability for negligence, promissory estoppel, breach of fiduciary duty and negligent misrepresentation, which are claims made by plaintiff. Under Georgia law, a party may disclaim liability for acts of negligence under an exculpatory clause. *W.R. Grace & Co.-Conn. v. Taco Tico Acquisition Corp.*, 216 Ga. App. 423, 426 (1995) ("This court has consistently held that disclaimers in contracts prevent justifiable reliance on other representations purportedly made by the parties.") (internal citation omitted.)  However, though an exculpatory clause may shield a party against a claim for negligence, it cannot protect a party against a claim of gross negligence. *See Flood v. Young Woman's Christian Ass'n of Brunswick, Ga., Inc.*, 398 F.3d 1261, 1266 (11th Cir. 2005) (internal citation omitted) (Georgia law allows parties to exempt themselves from simple, but not gross negligence).

While plaintiffs do not use the words "gross negligence" in their Amended Complaint, plaintiffs raise allegations regarding defendants' failure to perform gratuitous security checks and improperly registering financial advisors in the Program.  (Am. Compl. at ¶¶ 5, 68-72, 76, 85-87, 95-96, 107-108.)  Without the benefit of a record, the Court must accept all allegations raised by plaintiff as true.  Based on these claims, it is conceivable that defendants' actions rise to the level of gross negligence.  Thus, the

19

Court cannot find, as a matter of law, that defendants disclaimed liability for their alleged negligent acts.

NFLPA also argues that the Court should dismiss plaintiffs' negligent misrepresentation, promissory estoppel and fiduciary duty claims because the above disclaimer renders any reliance by plaintiffs unreasonable as a matter of law. Under Georgia law, one of the necessary elements of a claim for promissory estoppel and negligent misrepresentation is reliance by the plaintiff. *See Hendon Prop., LLC v. Cinema Dev., LLC*, 275 Ga. App. 434, 438-39 (2005) (essential elements of promissory estoppel are: "(1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiff[ ] to rely on such promise; (3) the plaintiff[ ] relied on such promise to [its] detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiff[ ] changed [its] position to [its] detriment by surrendering, forgoing, or rendering a valuable right." (internal citation and quotation omitted); ("The essential elements of negligent misrepresentation are (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.")

20

(internal citation omitted).[3]

Though the question of justifiable reliance is normally a factual issue for the jury to resolve, a determination of reasonableness can be made as a matter of law if a prior disclaimer or disclosure renders justifiable reliance on the misrepresentation improbable. *See Gilmour v. Am. Nat. Red Cross*, 385 F. 3d 1318, 1321 (11th Cir. 2004) ("determination of reasonableness can be made as a matter of law if a prior disclaimer or disclosure prevents justifiable reliance on the representation") (internal citations omitted).

Despite this line of cases, and plaintiffs' apparent inability to claim justifiable reliance given the exculpatory clause, the Court will not dismiss plaintiffs' claims on the basis of this disclaimer on the NFLPA's motion to dismiss. At the motion to dismiss stage, information such as the conspicuousness of the disclaimer and the parties' conversations regarding the disclaimer remain undeveloped.

---

[3] Defendants incorrectly assert that plaintiffs' claim for breach of fiduciary duty must also be dismissed under the exculpatory clause because plaintiffs cannot prove justifiable reliance. Under Georgia law, a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damage proximately caused by the breach. *Griffin v. Fowler*, 260 Ga. App. 443, 445 (2003) (internal citations omitted). Because this cause of action does not require that plaintiffs prove reasonable reliance, even if defendants correctly assert that the exculpatory phrase precludes justifiable reliance on the part of plaintiffs, the Court would not dismiss plaintiffs' breach of fiduciary duty claim on these grounds.

AO 72A
(Rev.8/82)

This information, including additional facts regarding the formation of the contract, will help the Court glean the disclaimer's meaning and effect.  On an empty record, the Court is not in position to hold that there are no circumstances under which the disclaimer might prove ineffective.  Though the Court does not conclude as a matter of law that plaintiffs' reliance on all defendants' purported misrepresentations was unreasonable, this issue may be capable of resolution on a motion for summary judgment, after development of the record.

The NFLPA also argues that the mandatory arbitration provision required plaintiffs to exhaust administrative remedies prior to bringing an action in court.  The Court reaches a similar conclusion with respect to the arbitration provision as it did with the disclaimer provision.  Not until there is a full record, in which the full scope of the arbitration provision is developed, will the Court rule as a matter of law that plaintiffs failed to exhaust any required administrative remedies.[4]

---

[4]  Defendants argue that an injunction is not a separate cause of action, but rather an equitable remedy.  Thus, according to defendants, because plaintiffs' underlying tort claims are preempted, plaintiffs have no separate claim for which an injunction would serve as a remedy.  Because the Court will not dismiss plaintiffs' underlying tort claims at this stage of the litigation, it likewise, will not dismiss plaintiffs' claim for injunctive relief.

22

III. **The Court Denies Defendant's Motion for a More Definite Statement**

In conjunction with its Motion to Dismiss, defendant NFLPA submitted an Alternative Motion for a More Definite Statement under FED. R. CIV. P. 12(e), FED. R. CIV. P. 10(b) and FED. R. CIV. P. 9(b). The Court finds that plaintiffs need not amend their Amended Complaint pursuant to any of the aforementioned rules.

A. **Plaintiffs Need Not Amend their Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(e)**

Under FED. R. CIV. P. 12(e), "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement." FED. R. CIV. P. 12(e). ("Rule 12(e)") The courts generally disfavor motions for more definite statements, and such a motion is properly made only when the pleading is so vague and ambiguous that a party may not reasonably respond to the pleading. *Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 571, 576 (N.D. Ga. 1989).

The Eleventh Circuit has noted that even the liberal pleading requirements under the Federal Rules of Civil Procedure require the pleader to provide his/her opponent with "fair notice of what [his] claim is and the grounds upon which it rests." *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d. 1290, 1294 (N.D. Ga. 2005) (Story,

23

J.) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957). In *Parker,*
Judge Story further explained that a "plaintiff should include in his
pleading some brief factual description of the circumstances
surrounding the acts or omissions upon which he bases his claim."
*Id.* (quoting *Williams v. Lear Operations Corp.*, 73 F.Supp. 2d 1377,
1381 (N.D. Ga. 1999). Furthermore, in multiparty litigation, the
Federal Rules do not allow a plaintiff to aggregate his/her claim
against several defendants in a single, unspecific statement, but
rather require the plaintiff to generally identify the conduct of
each defendant. *Id.* (internal citation omitted).

Defendant contends that plaintiffs' Amended Complaint fails to
allege specific facts setting forth the causation and injury elements
for their negligence, negligent misrepresentation, breach of
fiduciary duty and promissory estoppel claims. Specifically,
defendant claims that the following allegations regarding each of
those claims is insufficient: (1) as to plaintiffs' negligence claim:
"As a proximate result of Defendants' breaches of their duties of
care to Plaintiffs, Plaintiffs have been injured and suffered
damages." (Am. Compl. at ¶¶ 88); (2) as to plaintiffs' negligent
misrepresentation claim: "Plaintiffs relied upon defendants'
negligent supply of false information, and such reliance was
reasonable. As a proximate result of Defendants' breaches of their
duties of care to Plaintiffs, Plaintiffs have been injured and

24

suffered damages." (Am. Compl. at ¶¶ 97-98); (3) as to plaintiffs'
fiduciary duty claim: "As a proximate result of Defendants' breach
of fiduciary duties to plaintiffs, plaintiffs have been injured and
suffered damages." (Am. Compl. at ¶¶ 104); 109; and (4) as to
plaintiffs' promissory estoppel claim: "Relying on Defendants'
promises, Plaintiffs invested with Wright, Bond, and IMA
approximately $20 million in the aggregate and such investments are
now lost." (Am. Compl. at ¶¶ 113-114.)

The Court finds plaintiffs' allegations sufficient to put
defendants on notice as to the claims again them. At this stage in
the litigation, plaintiffs are only required to provide a short and
plain statement of his/her claim, which will provide defendant fair
notice regarding plaintiff's claim and the grounds upon which the
claim rests. Fᴇᴅ. R. Cɪᴠ. P. 8(a) ("Rule 8(a)"). Here, plaintiffs
have not filed an Amended Complaint that is so vague and ambiguous
that defendants cannot reasonably respond. Plaintiffs' Amended
Complaint adequately ties their allegations of fact to their claims
for relief, and, thus, plaintiffs have met their burden under Rule
8(a).

NFLPA similarly argues that plaintiffs failed to provide other
pertinent facts in their Amended Complaint. For instance, NFLPA
claims that plaintiffs did not sufficiently allege facts regarding
any specific investment by any plaintiff or the outcome of any

specific investments.  NFLPA also alleges that plaintiffs failed to provide information regarding the specific dates of plaintiffs' investments, the information they relied on when making those investments and the sources of such information.

Again, under the liberal pleading standards, plaintiffs are not required to provide this information.  A party "'need not set forth all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the [opposing party] fair notice of what the claim is and the grounds upon which it rests."  *See Hall v. RTM Rest. Group, S.E.*, Civ. A. No. 105-CV-2251CAP, 2006 WL 83428 (N.D. Ga. Jan. 11, 2006) (citing *Harris v. Procter & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996) (quoting *Mann v. Adams Realty Co., Inc.*, 556 F.2d 288, 293 (5th Cir. 1977)).

Plaintiffs' allegations put defendants on notice of plaintiffs' claims and the general factual allegations supporting each of those claims.  Additionally, plaintiff is not required to "plead law or match facts to every element of a legal theory in her complaint." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000).

Accordingly, the Court denies defendant's request for a more definite statement under Rule 12(e).

AO 72A
(Rev.8/82)

**B.    Plaintiffs Need Not Amend their Amended Complaint Pursuant to Federal Rule of Civil Procedure 10(b)**

Federal Rule of Civil Procedure 10(b) states that the allegations of a claim "shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances...[and] [e]ach claim founded upon a separate transaction or occurrence...shall be stated in a separate count."  FED. R. CIV. P. 10(b) ("Rule 10(b)").  Rule 10(b) is often used in conjunction with Federal Rule of Civil Procedure 12(e) to deal with a "shotgun pleading" that fails to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading.  *Anderson v. District Bd. of Trustees of Cent. Fl. Cmty. Coll.*, 77 F. 3d 364, 366 (11th Cir. 1996) (where plaintiff asserts many counts for relief, a properly drawn more definite statement will separate out each claim for relief into separate counts as required by Rule 10(b).)

Here, the Court does not find that plaintiffs' Amended Complaint constitutes a shotgun pleading and, furthermore, finds that plaintiffs' Amended Complaint properly presents each claim for relief under a separate count as required by Rule 10(b).  A majority of plaintiffs' claims are specific to each defendant and the facts underlying each of those claims are drawn into separate counts requesting relief.  For instance, the factual section of plaintiffs'

27

Amended Complaint separates allegations asserted against the NFL and the NFLPA.   Paragraphs 31 through 53 deal specifically with plaintiffs' claims against the NFLPA and its administration of the Financial Advisors Program, whereas Paragraphs 54 through 60 pertain to the NFL's alleged negligent background checks on players.   (Am. Compl. ¶¶ 31-53; 54-60.)

In each of plaintiffs' counts for relief, plaintiffs allege facts specific to each defendant.   In plaintiffs' count for negligence, plaintiffs specifically allege how each particular defendant breached its duty of care: "Defendants NFL and NFLPA breached their duties to exercise due care to Plaintiffs in failing to perform proper and accurate due diligence background checks..." (*Id.* at ¶ 85); "Defendant NFLPA also breached its duty to exercise due care to Plaintiffs in approving the applications of Wright, Bond and IMA as Registered Financial Advisors..." (*Id.* at ¶ 86); "Defendant NFLPA further breached its duty to exercise due care to Plaintiffs by failing ensure [sic] that Wright, Bond, IMA and IMAAG had appropriate insurance coverage..." (*Id.* at ¶ 87.)

In addition, plaintiffs' negligent misrepresentation claim alleges particular facts as to each defendant:   "Defendant NFLPA further owed the duty to Plaintiffs to act reasonably and competently in the listing of Wright, Bond and IMA as Registered Financial Advisors..." (*Id.* at ¶ 94.); "Each of Defendants breached their duty

28

to Plaintiffs to act reasonably and competently in the provision of information to Plaintiffs concerning the background of Wright..." (*Id.* at ¶ 95.); "NFLPA further breached its duty to Plaintiffs to act reasonably and competently in the provision of information to Plaintiffs by listing Wright, Bond and IMA as Registered Financial Advisors..." (*Id.* at ¶ 96.)

Once again, plaintiffs break down their allegations regarding defendants' alleged breach of fiduciary duty: "Defendant NFLPA also knew or should have known that Plaintiffs placed confidence and trust in them to exercise the highest standard of care and competence in approving the applications of Wright, Bond and IMA..." (*Id.* at ¶ 103.); "Defendants knew or should have known that Plaintiffs had no prior training, expertise or knowledge concerning background checks..." (*Id.* at ¶ 104.); "Defendant NFL created a fiduciary relationship between itself and Plaintiffs and was required to use the utmost good faith in performing proper and accurate diligence checks..." (*Id.* at ¶ 105.); "Defendant NFLPA created a fiduciary relationship between itself and Plaintiffs and was required to use the utmost good faith (a) To protect Plaintiffs and other former, current and prospective NFL players from fraud by Registered Financial Advisors; (b)..." (*Id.* at ¶ 106.); "Defendant NFLPA breached its fiduciary duty to Plaintiffs in failing to protect Plaintiffs from fraud by Registered Financial Advisors..." (*Id.* at

¶ 107.); "Defendants NFL and NFLPA breached their fiduciary duties to Plaintiffs in failing to perform proper and accurate due diligence background checks..." (*Id.* at ¶ 108.).

Plaintiffs' promissory estoppel claim similarly provides separate paragraphs regarding their allegations as to each defendant: "As a result of Defendant NFL's promises, express and implied, to properly perform security background checks on Wright, Bond, IMA, IMAAG Defendant NFL should have reasonably expected that their promises would induce forbearance" (*Id.* at ¶ 112.); "As a result of Defendant NFLPA's promises, express and implied to properly perform security background checks on Wright, Bond, IMA and IMAAG to properly process Wright's and Bond's financial advisor applications and to protect Plaintiffs from the fraud..." (*Id.* at ¶ 113.)  Based on the above sampling, plaintiffs' Amended Complaint is not accurately characterized as a shotgun complaint.  Plaintiffs segregated their allegations and adequately pled each of their allegations with sufficient specificity.  Thus, the Court will not require plaintiffs to file a more definite statement under Rule 10(b).

### C.   **Plaintiffs Need Not Amend their Amended Complaint Pursuant to Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b).

AO 72A
(Rev.8/82)

("Rule 9(b)")  Defendants argue that the heightened pleading standard of Rule 9(b) is equally applicable to plaintiffs' negligent misrepresentation claim.  The Eleventh Circuit has not ruled on this question, and courts within and outside this circuit have reached varying conclusions regarding this issue.

Some courts have held that Rule 9(b) is an exception to the liberal pleading standards espoused in Rule 8(a).  These courts hold that Rule 9(b)'s more exacting standards should not extend to causes of action not specifically enumerated in Rule 9(b).  *See Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, Civ. A. No. 03-10179, 2004 WL 2297150, 115 Fed. Appx. 662, 668 (5th Cir. 2004) (plaintiff only required to plead negligent misrepresentation under the liberal pleading standards of Rule 8(a), and not the heightened pleading standards of 9(b)); *Titan Stone, Title & Masonry, Inc. V. Hunt Constr. Group, Inc.*, Civ. A. No. 05-3362, 2006 WL 2788369 *3 (D.N.J. Sep. 27, 2006) (negligent misrepresentation claim not subject to heightened pleading standard of Rule 9(b)).

Other courts have held that the heightened pleading standards of Rule 9(b) apply to claims for negligent misrepresentation.  *See Nielson v. Union Bank*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (noting under California law, negligent misrepresentation constitutes a form of deceit); *Benchmark Elec. Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (heightened pleading standard applies to

31

claim for negligent misrepresentation when that claim is based on the same underlying facts as the fraud claim).  Likewise, some courts within the Eleventh Circuit have held that plaintiffs must plead claims for negligent misrepresentation with sufficient particularity. *See Advisor's Capital Inv., Inc. v. Cumberland Cas. and Surety Co. and I.G.I.C. Mgmt. Co.*, Civ. A. No. 8:05-CV-404-T, 2006 WL 1428490 *3 (M.D. Fl. May 22, 2006) (Florida's negligent misrepresentation claim sounds in fraud, and, therefore, negligent misrepresentation claim must meet heightened requirements of Rule 9(b).)

However, other district courts have held that Rule 9(b)'s heightened pleading standard does not apply to claims not alleging fraud.  For instance, in *Woods v. Southern Co.*, 396 F. Supp. 2d 1351, (N.D. Ga. 2005) (Story, J.), the court held that plaintiff need not plead his ERISA claim under a heightened pleading standard.  In discussing this holding, Judge Story cited a number of cases holding that a rigorous pleading requirement is required in ERISA claims only when a plaintiff's ERISA claim amounts to an allegation of fraud. (*Id.* at 1360, n. 5.) (citing a case from the Northern District of Illinois holding that because plaintiff alleged negligent misrepresentation, but not fraud or mistake, the court would not require plaintiff to plead his ERISA claim under Rule 9(b)). Likewise in an unreported decision, Judge G. Ernest Tidwell has held that plaintiffs need not plead claims for negligent misrepresentation

32

with particularity. *See Snapping Shoals Elec. Membership Corp. v. RLI Ins. Corp.*, Civ. A. No. 105-CV-1714-GET, 2005 WL 3434803 (N.D. Ga. Dec. 14, 2005) (Tidwell, J.) (noting that the Supreme Court does not required particularity beyond notice pleading for claims that do not fall under Federal Rule of Civil Procedure 9(b), and, therefore, that the complaint adequately pled negligent misrepresentation under the Rules' liberal pleading standard). (*Id.* at *6.); *See also, In re AFC Ent., Inc.*, 348 F. Supp. 2d 1363, 1377-1379 (N. D. Ga. 2004) (Thrash, Jr., J.) (court need not determine if Section 11 claim is subject to heightened pleading standard because plaintiffs did not base Section 11 claim on allegations involving fraud.)

NFLPA, however, cites to *Prince Heaton Enter., Inc. v. Buffalo's Franchise Concepts, Inc.*, 117 F. Supp. 2d 1357, 1361 (N.D. Ga. 2000) (Thrash, J.), in support of its argument that plaintiffs' negligent misrepresentation claim must be pled with particularity. In *Prince Heaton*, the court laid out the five elements of a fraud claim and thereupon stated that "[e]ach of these elements must be stated with particularity" and cited Rule 9(b). (*Id.* at 1360.) The sentence directly proceeding this sentence stated "Negligent misrepresentation is a similar cause of action substituting negligence for the intent to deceive element." (*Id.*)

Though NLFPA relies on this case to support its argument that a claim for negligent misrepresentation requires heightened pleading,

33

the *Prince Heaton* court does not specifically apply Rule 9(b) to plaintiff's negligent misrepresentation claim.   Rather, the Court dismissed the claim for failure to allege reliance.   Furthermore, the citation to Rule 9(b) follows the court's analysis of the fraud, and not negligent misrepresentation claim.   Thus, this case does not necessarily hold that negligent misrepresentation must be pled with particularity.

Other cases in the Eleventh Circuit suggest that in the securities fraud context non-fraud securities' claims must be pled with particularity when the facts underlying the misrepresentation are part of plaintiff's fraud claim.   In *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006), the court held that claims under Sections 11 and 12(a)(2) of the Securities Act, which do not require allegations of fraud or scienter, must be pled with particularity when those claims are premised on plaintiff's fraud claim.   (*Id.* at 1278.)   Thus, if plaintiff brings a Section 11 or 12(a)(2) claim without alleging fraudulent misrepresentation, plaintiff may avoid Rule 9(b)'s heightened pleading standard.   (*Id.* at 1278.)

At this time, the Eleventh Circuit does not require heightened pleading for a claim of negligent misrepresentation.   Though district courts outside of this jurisdiction have required plaintiffs to plead their negligent misrepresentation claims under Rule 9(b), cases

34

issued by judges in the Northern District of Georgia have not required plaintiffs to do so.  At most, one case has required plaintiffs to plead claims under Section 11(a) and 12(a)(2) of the Securities Act, which are premised on plaintiff's fraud claim with particularity. At any rate, district court opinions, no matter their origin, are not binding precedent.  As the 11th Circuit has not applied Rule 9(b) outside of the fraud context, neither will this Court, at this time.  Accordingly, the Court will not require plaintiffs to amend their Amended Complaint to add more specific allegations, and it **DENIES** defendant NFLPA's Motion for More Definitive Statement.

## IV.  **Plaintiff's Motion for Relief Pursuant to Federal Rule of Civil Procedure 56(f)**

Plaintiffs moved for a continuance of any consideration of defendant NFL's alternative motion for summary judgment.  Because the Court has chosen not to convert defendant's motion to dismiss into one for summary judgment, the Court **DENIES as moot** plaintiffs' Motion for Relief Pursuant to FED. R. CIV. P. Rule 56(f).  ("Rule 56(f)")

## V.  **Defendant NFLPA's Motion for Leave to File Sur-Reply**

Defendant NFLPA requests leave to file a sur-reply to plaintiff's Reply Memorandum in Support of Their Motion for Relief Pursuant to Rule 56(f) ("Def. Mot. for Leave to File Sur-Reply" [35].)  However, neither the Federal Rules of Civil Procedure nor the

35

Local Rules of the Northern District of Georgia authorize parties to file sur-replies and permission to file a sur-reply is solely within the court's discretion. *In re World Access, Inc.* 310 F. Supp. 2d 1281, 1288-1289 (N.D. Ga. 2004). A review of plaintiff's Reply Memorandum in Support of Their Motion for Relief Pursuant to Rule 56(f) indicates that it does not raise any new arguments or legal argument not previously raised in prior motions. Furthermore, defendant, NFLPA, never filed a reply to plaintiffs' Motion for Relief Pursuant to Rule 56(f). Therefore, it cannot now raise new arguments in a sur-reply that it could have raised in a reply pleading.

Accordingly, the Court **DENIES** defendant NFLPA's Motion for Leave to File Sur-Reply.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant National Football League's Motion to Dismiss [19], **DENIES** defendant National Football League Players Association's Motion to Dismiss [20], **DENIES** defendant National Football League Players Association's Motion for a More Definite Statement [21], **DENIES as moot** plaintiffs' Motion for Relief Pursuant to Rule 56(f) [28], and **DENIES** defendant National Football Players Association's Motion for Leave to File Sur-Reply [35].

AO 72A
(Rev.8/82)

SO ORDERED, this 29 day of March, 2007.

_Julie Carnes_

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

37